William McCracken v. Commissioner. Roland G. Edens v. Commissioner. R. J. McManama v. Commissioner. Roland G. Edens and Ona L. Edens v. Commissioner.
William McCracken v. Commissioner
Docket Nos. 17088, 17089, 17090, 17091.
United States Tax Court
1951 Tax Ct. Memo LEXIS 31; 10 T.C.M. (CCH) 1137; T.C.M. (RIA) 51368; November 30, 1951
*31 James J. Waters, Esq., Commerce Bldg., Kansas City, Mo., and James A. Waechter, Esq., Eagleton Bldg., St. Louis, Mo., for the petitioners. George E. Gibson, Esq., for the Respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, duly consolidated for hearing, involve deficiencies in income tax as follows: Year
Docket Number
Amount
1943
17088
$ 6,243.99
1943
17091
6,355.50
1944
17088
10,270.98
1944
17089
10,270.98
1944
17090
5,095.40
1945
17088
15,139.79
1945
17089
15,139.80
1945
17090
15,671.24
After concessions stipulated, including stipulation that decision of deficiency of $4,175.31 in income tax for 1944 be entered in Docket No. 17090, there remain for determination the following questions: (1) Whether the Commissioner erred in disallowing as purchase costs cash items totaling $30,735 for 1943 and $39,545.26 for 1944; and (2) whether the Commissioner erred in disallowing, as cost of goods sold in 1945, cost of automobiles above ceiling price fixed by the Office of Price Administration. Findings of Fact The facts stipulated are so found, by reference. The petitioners' income tax *32 returns for all taxable years were filed with the collector for the first district of Missouri. The petitioners reside in St. Louis, Missouri. During the calendar years 1943 and 1944, and until September 1944, the petitioners William McCracken and Roland G. Edens were equal partners in a used automobile business under the trade name of "E & M Motor Company." On September 1, 1944, the petitioners William McCracken, Roland G. Edens, and R. J. McManama formed a partnership to engage in the business or dealing in used automobiles. For the period September 1 to December 31, 1944, and during the entire year 1945 this partnership did business under the name Auto Sales Barn at 3807 Easten Avenue, St. Louis, Missouri. During the year 1945 the partnership did not operate its business within the price limitations fixed by the Office of Price Administration (hereinafter referred to as O.P.A.), either as to cost of automobiles purchased or as to amounts received for automobiles sold. Two separate sets of books were kept by the partnership. In one set of books kept by the partnership, the sale of each automobile was recorded at the ceiling price fixed by the O.P.A., and the purchase was *33 recorded at an arbitrary figure lower than the ceiling price in order to show a profit on the transaction. The total amount of gross sales, as shown by this set of records, represented the maximum amount which could have been paid for the automobiles purchased by the partnership without violating O.P.A. statutes and regulations. The other set of books kept by the partnership reflected the actual cost price and the actual sale price of each automobile. The figures used in the partnership return for 1945 are those reflected in the set of books showing actual cost price and actual sales price of each automobile. Petitioners obtained used cars by following the advertisements in newspapers. A considerable number of purchases were made for cash because the petitioners not being well known business men "quite a few" people would not take their checks. They would make out a check payable to "Cash," and get the cash from the bank for the seller of the automobile if he would not take their check. From January 1, 1943, to about August 20, 1943, E & M Motor Company sold all of its cars at auction through either the St. Louis Auction or Kansas City Auction, except that three sales were *34 made at St. Joseph, Missouri. During that period complete records were kept. Thereafter records were not complete though the partnership had some books. An accountant made up for petitioners, from bank statements, certain schedules, showing checks drawn to cash as for purchase of automobiles. Many of the items shown on the schedules prepared by the accountant were out of chronological order. These schedules were the basis for preparation of the partnership income tax returns for 1943 and 1944. The return of E & M Motor Company for 1943 showed merchandise bought for sale as $217,699.73 and total gross receipts of $224,045.74. The return for 1944 showed merchandise bought for sale as $141,972.57 and gross receipts as $147,198.44. The Commissioner upon examination of the returns and the schedules prepared by the accountant disallowed $30,735 as cost of merchandise and increased the income of each partner by one-half of that amount or $15,367.50 (except for a $10 error) for 1943. For the year 1944 the Commissioner likewise disallowed costs of merchandise sold of $39,545.26 and increased the income of each partner by one-half thereof or $19,772.63. The schedules indicated, opposite some *35 of the cash items, that they were for purchases of cars; in other cases there was no such indication. The cash items total more than the amounts disallowed, in 1943 and 1944, by the Commissioner. The partnership return for petitioners doing business as Auto Sales Barn reported for 1945 as follows: Gross receipts
$494,036.60
Less cost of goods sold: Inventory at beginning
of year
$ 25,081.14
Merchandise bought for
sale
431,652.68
Total
$456,733.82
Less inventory at end
of year
4,467.33
452,266.49
Gross profit from business
$ 41,770.11
Other income
99.75
Total income
$ 41,869.86
Total deductions
19,683.76
Ordinary net income
$ 22,186.10
After examination of the return for 1945 and records, the Commissioner determined cost of goods sold for the year 1945 to be $367.590.20, rather than $452,266.49 as shown in the return, and disallowed the difference of $84,676.29 in determining the partnership gross profit to be $126,446.40. The said amount of $84,676.29 was the amount paid by the partnership in excess of ceiling prices fixed by the O.P.A. for automobiles which were sold during 1945 or automobiles which were in inventory at the *36 close of 1945. The Commissioner determined the ordinary net income of the partnership for the year 1945 to be $106,862.39 (being the sum of $22,186.10, the amount shown on the return, and the $84,676,29) and determined the petitioners' distributive shares as follows: Income after
Name of
partners'
Partners'
Ordinary
partner
salaries
salaries
income
R. J. McManama
$32,639.80
$3,033.00
$35,672.80
R. G. Edens
32,639.80
2,955.00
35,594.80
Wm. McCracken
32,639.79
2,955.00
35,594.79
Totals
$97,919.39
$8,943.00
$106,862.39
The deficiencies asserted by the Commissioner against the petitioners for the year 1945 result entiely from the above adjustments in cost of goods sold and consequent increases in the amounts of their distributive shares. Petitioner Edens usually took care of the books and kept track of the purchases, and the accountant usually took such matters up with Edens and not with petitioner McCracken. McCracken testified. Edens though in the courtroom did not testify. He is a little hard of hearing. The accountant was not present and did not testify. McCracken had not checked the checks against the schedules made up by the accountant *37 and did not know where the checks were. His testimony was based on their way of doing business. Opinion The first question presented to us is one of fact: Did the Commissioner err in disallowing as cost of purchase of automobiles during 1943 and 1944 the respective sums of $30,735 and $39,545.26, appearing as checks written to "Cash"? The evidence before us is indefinite in important respects. The Commissioner had disallowed the above amounts for lack of substantiation, as purchase cost of automobiles sold. One of the petitioners, McCracken, testified that he was not the one who was familiar with such books as were kept. Petitioner Edens, according to McCracken's testimony, had usually taken care of the books and kept track of the purchases. Edens was present, as McCracken testified, but did not testify. Asked as to Edens: "Mr. Edens is hard of hearing, is he not?" McCracken answered: "A little; yes, sir." McCracken said he had not checked the checks against the schedules prepared by an accountant from bank statements because he had not been able to see the checks lately and did not know where they were. McCracken's testimony, the only testimony in the case, was to the effect that *38 he and Edens were not well known business men in 1943 and 1944 and that "quite a few" people would not take their check; that they would make out a check and go to the bank and get the cash for the people in case they would not take a check; that the checks were made to "Cash", were not used for any other purpose except for buying automobiles and expenses, and that the cash checks were written for the purchase of automobiles. In connection with this testimony we have before us the admitted fact that the partnership was in the black market in automobiles. On brief, petitioners urge as reason why witnesses were not produced to show the purchase of automobiles the fact that "such witnesses were the recipients of cash of over-ceiling prices"; and specifically admit that the petitioners were engaged in purchasing and selling automobiles in violation of O.P.A. regulations then in force. Schedules prepared by an accountant, used in the preparation of income tax returns and relied upon by petitioners, were not prepared from any books of record but from bank statements, and any books kept by the partnership were not produced, and the witness McCracken had not even checked the cash checks in *39 question with the accountant's schedules prepared from the bank statements. Obviously the fact that petitioner Edens, present in the courtroom, was shown, in response to a leading question, to be "a little" hard of hearing does not explain his failure to testify. Failure to keep or manipulation of books, disclosed by the record, the illegal trafficing in automobiles at prices above O.P.A. ceiling prices and the failure of Edens to testify all reflect on the evidence adduced and we are not able to accord it the compelling effect urged by the petitioners because of lack of rebuttal testimony by the respondent. On the other hand, we think that though it is altogether insufficiently proved, there probably were purchases of automobiles by cash under the circumstances detailed here and that some checks written for cash may have been properly expended in the purchase of automobiles. Since the record shows that the Commissioner did not disallow all of the checks to "Cash" relied upon by the petitioners and contained in the schedules prepared by their accountant, it may be that some of the checks to "Cash" spent for automobiles were allowed by the respondent. (The respondent, on brief, points *40 out the items disallowed by him and the petitioners take no particular issue with such statement but the record does not in fact contain proof as to what items were disallowed, so we disregard respondent's statement on brief.) We find in the record before us no reason why schedules by an accountant, not from books but from bank statements and in many places not in chronological order, should be relied upon as evidence. Nevertheless, we are convinced from the whole record, such as it is, that some checks thereof made to "Cash" were spent for automobiles and have therefore under the rule of , bearing heavily upon the petitioners for their own inexactitude, concluded and we hold that of the amounts disallowed by the Commissioner, that is, $30,725 for 1943 and $39,545.26 for 1944, $6,500 for 1943 and $7,000 for 1944 was spent for automobiles and to that extent, and only to that extent, the Commissioner erred in denying purchase costs Our next question is one of law, and simple: Did the Commissioner err in denying for the year 1945 the cost of automobiles above the O.P.A. ceiling price paid for same? The petitioners rely upon our opinion *41 in . The respondent merely urges that our view was erroneous; but the appeal therein was dismissed and the case affirmed February 20, 1950. It appears to state the rule governing the matter, is therefore followed, and we hold that the Commissioner erred in denying to the petitioners as cost of goods amounts paid above price set by the Office of Price Administration, as to the year 1945. Decisions will be entered under Rule 50 in Docket Nos. 17088, 17089, 17091, and in Docket No. 17090 that there is a deficiency of $4,175.31 as to the year 1944; and decisions of no deficiencies as to the year 1945.